# CHARLESTON

## YATES v. CROZER COAL & COKE COMPANY.

### Submitted March 16, 1915.    Decided March 23, 1915.

1. MASTER AND SERVANT—*Actions for Injuries—Sufficiency of Declaration.*

   A declaration in an action for personal injuries, sustained by an employee in a coal mine, is not bad for failure to negative certain defensive matters, such as fellow servantcy, assumption of risk, and the like. (p. 52).

2. APPEAL AND ERROR—*Bill of Exceptions—Certificate—Sufficiency.*

   Where a bill of exceptions is signed by the judge in term time and made part of the record by an order of the court, no certificate to the clerk, as when signed by the judge in vacation, is required. Nor will a mere clerical error, as in a date, self correcting by the record, vitiate such bill of exceptions. (p. 53).

3. SAME—*Harmless Error—Admission of Evidence.*

   Though evidence be admitted bearing on an issue not presented by the pleadings, yet if it also bear on another issue presented thereby, its admission will not constitute reversible error. Its application may be limited when requested by instructions to the jury. (p. 53).

4.  SAME—*Harmless Error—Rejection of Evidence.*
    Error in rejection of evidence fully cured by the subsequent testimony of the witness admitted will not justify reversal.  (p. 54).

5.  MASTER AND SERVANT—*Injuries to Servant—Safe Place to Work.*
    An instruction telling the jury to find for plaintiff if the agents. of the defendant corporation failed to perform its non-assignable duty to use reasonable care to furnish plaintiff a reasonably safe place to work is not bad for imputing that duty to agents.  A corporation can act only by authorized agents in the performance of any duty.  (p. 54).

6.  DAMAGES—*Personal Injuries—"Commensurate"—"Compensatory."*
    An instruction authorizing the jury to find for plaintiff damages as they might *"think proper"*, *commensurate* with his injuries, not exceeding the sum sued for, is not bad because of the words "think proper", limited by the words "commensurate with his injuries", for such damages would be compensatory merely, the word "commensurate" as used in such an instruction being the equivalent of the word "compensatory."  (p. 55).

7.  SAME—*Excessive Damages—Loss of Proof.*
    The verdict of the jury in this case is supported by the evidence, and should not be set aside as excessive, six thousand dollars, for loss of a foot.  (p. 56).

    (LYNCH, JUDGE, absent.)

Error to Circuit Court, McDowell County.

Action by W. A. Yates against the Crozer Coal & Coke Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother & Hughes,* for plaintiff in error.

*Stokes & Sale* and *Lawson Worrell,* for defendant in error.

MILLER, JUDGE:

Action by plaintiff, for personal injuries sustained while employed in operating an electric motor in defendant's coal mine, due to the alleged negligence of defendant in failing to provide a reasonably safe track between the drift mouth and the motor house on the outside of the mine.  Plaintiff obtained a verdict and judgment in the court below for six thousand dollars, interest and costs, and defendant has

brought that judgment to this court for review on writ of error.

The first point is that the declaration is bad, not for failure to aver affirmatively the relationship of master and servant, and the non-assignable duty of defendant to provide plaintiff a reasonably safe track over which to operate his motor, and the breach of that duty; but for failure to negative certain defensive matters and other matters.

We think the declaration good. It contains averments sufficient to show relationship of master and servant, and of duty of the former to the latter in respect to a reasonably safe place to work, and breaches of that duty. This, in general, is all that is required. Though the alleged negligence relate to employment in operating a coal mine, the charge of negligence to use reasonable care to provide a reasonably safe place to work, a non-assignable duty, is sufficient. If the act of negligence be that of a fellow servant, this is defensive matter, not requiring negative averment. If a non-assignable duty, no matter what agent is responsible for the breach, the master remains liable. The declaration does allege due authority of plaintiff's superior in the premises, directing him in his service.

It was unnecessary to aver ignorance of the dangerous character of the track, or want of means of ascertaining its dangerous character. The servant, in such cases, has the right to assume that the master has performed his duty, unless the danger be so open and apparent, that the servant is bound to see and thereby to assume the risk. But no negative averment is required. This is matter of defense. The averments of the declaration disclose no such knowledge or fact of plain and obvious danger.

Moreover, the master, in general, is bound to know by reasonable and timely inspection and tests, the dangerous character of his plant. Averment of knowledge of the one and ignorance of the other is unnecessary.

Two general legal propositions cover substantially all the grounds of demurrer. One is that a servant assumes the risk incident to his employment, only after the master has performed his duty. *Riley* v. *Railway Co.*, 27 W. Va. 150; *Cooper* v. *Railroad Co.*, 24 W. Va. 37; *Moon's Admr.* v.

*Richmond &c. A. R. Co.,* 78 Va. 745; *Norton Coal Co.* v. *Murphy,* 108 Va. 528.

The other proposition is that the declaration need not negative assumption of risks and other defenses. *Hoffman* v. *Dickinson,* 31 W. Va. 142; *Leach* v. *Martin,* 69 W. Va. 219; *Richmond Granite Co.* v. *Bailey,* 92 Va. 554.

Preliminary to the consideration of the merits of the case the point is made that there is not in the record a proper bill of exceptions or certificate of the evidence. Two grounds are assigned. First, that the order purporting to make the bill of exceptions a part of the record is not certified to the clerk as provided by the statute. The point is not good. The order was made in court at a regular term, and no certification is required, as upon an order of the judge in vacation. Second, in the caption of the bill of exceptions it is recited that the trial took place on February 19, 1913, while the order of the court showing the issues joined and the empanelling of the jury and trial appears from the record to have all taken place on February 27, 1913, a defect incurable, the orders of a court speaking a verity. We think there is nothing to discredit the bill of exceptions based on these grounds. The parties, the style of the case, the orders of the court, and other marks in the record are quite sufficient to render the bill of exceptions definite and certain, and no such apparent clerical error could be allowed to destroy the identity of the bill of exceptions with the case to which it patently relates.

On the merits, the point is made that as there is no averment of want of knowledge by plaintiff of the defective track or failure to properly instruct, certain evidence of plaintiff to the effect that when employed by the mine foreman, his boss, he gave him no instructions as to what he wanted him to do— what he hired him for, except that one morning he handed him a book of motorman reports, and told him to go get him a motor out of the motor house and go to running a motor; and further to the effect that this mine foreman and his assistant assigned him to his work, and employed and discharged the men, was improperly admitted over objection, no issue being presented on these questions of want of knowledge and failure to instruct. We think the point with-

out force. This evidence was admissible on the question of authority of the mine foreman, whether he had been given any authority outside of his statutory duties as mine foreman, and bore on this question, an important issue before the jury.

Another point made against the admissibility of evidence is, that plaintiff's witness Pardue, an expert, who put down the track on which plaintiff's injury was sustained, was permitted to state over objection, that the floor and track looked tolerably fair to look at it. The objection is that the question called for an opinion as to the condition of the track. How the track appeared was one of its conditions, affecting the motorman. He was not bound to know its actual condition; but could assume that it was safe unless apparently unsafe.

Another point on the admissibility of the evidence is, that plaintiff's witness Harrison Yates, speaking from a knowledge of the appearances of the track some six weeks prior to the accident, was permitted to say over objection that one occupying the position of motorman and looking along ahead of him over the rails on the floor, with his eyes, could not have discovered anything wrong with the track or the floor. We see no substantial error in admitting this evidence. Of course the surface conditions might have changed in the six weeks; but the evidence of other witnesses, acquainted with the track just before the accident, tends to show no material changes in the surface conditions, sufficient to warn the motorman using the track.

The next point relates to the rejection of certain evidence showing or tending to show that motors were operated over the same track, after the alleged injuries to plaintiff, without accident. Whatever error was committed in the particular instance complained of was fully cured by the evidence of the same witness immediately following as well as by the evidence of other witnesses, showing that motors had been operated over the same track after as before the accident to plaintiff without injury to motormen.

Plaintiff's instruction number one is next complained of. It is said of this instruction, first, that it erroneously tells the jury to find for plaintiff if the agents of the defendant failed to perform the non-assignable duty to use reasonable care to furnish plaintiff a reasonably safe track over which to operate

his motor. We see no error in this particular. True the duty is not assignable, in the sense that the master can escape liability for its neglect, but the rule invoked does not preclude a master corporation from delegating the duty to an agent, its only means of performing the duty.

Another objection to this instruction is that it directs the jury to find for plaintiff damages, as they might *think proper, commensurate* with his injuries, not exceeding the sum sued for. It is said the jury could only find compensatory damages, not such sum as they might "think proper", and "commensurate", with his injuries. The words might "think proper" are clearly limited by the word "commensurate" with his injuries. The language of the instruction would not allow the jury to go beyond an amount commensurate with plaintiff's injuries. But it is argued that "commensurate" is not the equivalent of "compensatory", employed in *Talbott* v. *W. Va. C. & P. Ry. Co.,* 42 W. Va. 560, and *Peters* v. *Johnson, Jackson & Co.,* 50 W. Va. 644, rendering the instruction erroneous for this reason. "Compensatory" damages are by these cases distinguished from "punitive" damages, recoverable, as a general rule, only where defendant has been guilty of some reckless indifference to plaintiff's right, or other wanton or willful neglect of duty. As thus distinguished commensurate damages would imply nothing more than compensatory damages, that is, damages proportionate or equal in measure or extent to plaintiff's injuries. An instruction using the word commensurate as the equivalent of the word compensatory was approved in *Cheeks* v. *Virginia Pocahontas Coal Company,* (W. Va.) 82 S. E. 756. We find no error in this instruction.

Another error assigned is, the rejection of defendant's instruction to return a verdict in its favor. This prayer of defendant was based on the theories, first, that defendant was not shown to have had actual knowledge of the defective condition of the track; second, that the track was for temporary purposes only; third, plaintiff's knowledge or means of knowledge, equal with defendant, of the condition of the track, and fourth, assumption of risk by plaintiff. Respecting the first theory, the evidence does not sustain it. Plaintiff knew that the track was laid over the floor of the old shop;

but he had nothing to do with laying the track. Defendant was bound to know, and by reasonable and timely inspection and tests, to continue to know that the track was reasonably safe for the operation of its motors, and plaintiff was entitled to rely on perförmance by defendant of this duty. Nor does the evidence show plaintiff had knowledge or equal means of knowledge with defendant of the condition of the track, so as to charge him, on the fourth theory, with assumption of risk. According to the weight of the evidence the dangerous condition of the track was not so open and apparent, as to charge plaintiff with notice, and resultant assumption of the risk.

The damages, six thousand dollars, for the loss of a foot may seem large; but on no legal principles are we justified in saying they are excessive, justifying reversal.

We, therefore, affirm the judgment.

ON REHEARING:

Two points are again pressed for reversal: First, that defendant was not negligent; second, that plaintiff assumed the risk.

We have given these points careful consideration. On the first, it is true the master is not an insurer, that his duty is to use reasonable care to furnish his servant a reasonably safe place to work. So it is argued that the master in this case could not reasonably have anticipated the injury to plaintiff. It is conceded the track on which plaintiff operated his motor and sustained his injuries was laid on an old shop floor, much decayed, and though thought by some reasonably safe, while repairs were going on, yet of doubtful strength and consistency to operate heavy motors upon, even as a temporary makeshift. Plaintiff testified that one of the boards, a heavy two inch oak plank, eight or nine feet long, loose at the end next to him as he drifted down a slight incline, without power, and upon the track opposite the plank, flew up and protruded into the cab of the motor where he sat, catching his leg and breaking it. If the accident could have happened as this witness swears, it seems to us it was negligence on the part of defendant to suffer its servants to operate heavy motors over the track laid on this old floor. We know that mine motors are necessarily built low, and are operated close

to the track, and loose boards on the track would be liable to fly up and come in on the floor of the cab where the motormen are required to sit, and injure them. From the description of the motor operated by plaintiff there was an open space in front of him through which the plank injuring him came into the cab. Much stress is laid on the apparent conflict between Yates' evidence and that of his witness Gravely, another motorman, who was the first one to come to him after the accident. Yates seems to say that the board was then still sticking in his motor. Gravely says, on cross-examination, "there was no plank in the motor at that time." The fact is material of course, as tending to corroborate Yates, and his theory of the accident; but we do not think it is controlling. Evidently there was considerable excitement about the motor at that time. One or the other of those witnesses may have been mistaken. Yates does say that "the motor struck that board in the middle and it sprung that motor back and I got my leg out of there." When this happened the board may have dropped down out of the motor, and though he saw it at that instant, and assumed that it remained in the cab, he may have been mistaken as to the fact of its being in the cab at the instant Gravely got to him. As no other reasonable theory as to how plaintiff could have sustained his injuries was offered, we cannot ignore his evidence, nor could the jury, the triers of the fact, have properly done so. The physical facts shown in evidence do not overcome plaintiff's evidence. No fact and no witness says the accident did not occur just as plaintiff swears it did. One witness, Bowman, who arrived after Gravely, swears the plank was not in the motor when he saw it, that "they had gotten it out." There is a suggestion that there was a hole in the floor of the cab, through which plaintiff may have slipped his foot, and have been injured by his own negligence. Evidently there was no hole in the floor of the cab. Such a machine would not be a safe one. Manifestly the hole or open space through which the plank protruded was that in front of the cab. So we think the jury on the evidence referred to and much other evidence in the case, could have found, as they evidently did, that defendant was negligent.

On the question of assumption of risk, we do not think we

can say, from the evidence that plaintiff had such knowledge of the defective track as to put him on notice, and thereby assumed the risk. Defendant would have us believe the track was reasonably safe, and that there were no defects therein to put it on notice. How then can we impute contributory negligence, and assumption of risk to plaintiff? Plaintiff had the right to assume that the track was reasonably safe. He was not called upon to take notice of the condition of the track, unless so apparent that he could not shut his eyes thereto, without assuming the risk of injuries therefrom. The duty of timely inspection and tests to make and keep the track in a reasonably safe condition rested upon defendant. So we must overrule this point also.

We, therefore, remain of the opinion to affirm the judgment, as upon the original hearing.

*Affirmed.*